# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

DEBORAH ANNETTE WYNN, )
)
      Plaintiff, )
)
v. ) Case No. CIV-14-357-SPS
)
CAROLYN W. COLVIN, )
ACTING Commissioner of the )
Social Security Administration, )
)
      Defendant. )

## OPINION AND ORDER

The claimant Deborah Annette Wynn requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on August 25, 1965, and was forty-six years old at the time of the administrative hearing (Tr. 46, 126). She has a tenth grade education, and has worked as a customer service representative and office supervisor (Tr. 46, 65). The claimant alleges that she has been unable to work since November 1, 2007, due to chronic headaches, posttraumatic stress disorder, and back problems (Tr.171).

## Procedural History

On January 3, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 126-27). Her application was denied. ALJ Deborah Rose conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 25, 2013 (Tr. 19-28). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) with occasional climbing, stooping, crouching, and crawling; however, she was limited to simple, routine tasks and could perform superficial and incidental work-related interaction with co-workers and supervisors with no significant public interaction (Tr. 23). The ALJ concluded that although the claimant

could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the regional and national economies, *e. g.*, mail clerk, office cleaner, circuit board assembly, and machine operator (Tr. 27).

## Review

The claimant contends that the ALJ erred by: (i) failing to consider, weigh, and evaluate all of the evidence; (ii) failing to consider all of her medically determinable impairments; and (iii) improperly assessing her credibility. The undersigned Magistrate Judge agrees with the claimant's first contention.

The ALJ found the claimant had the severe impairments of mild degenerative disc disease, major depressive disorder, and posttraumatic stress disorder (Tr. 21). The medical evidence relevant to this appeal reveals that the claimant was initially prescribed anti-depressant medications by her family physician, Dr. Kenneth Veteto, on December 5, 2005, and that Dr. Veteto managed such medications for the claimant through June 26, 2007 (Tr. 205, 213, 215, 219, 221, 230, 240). On September 23, 2008, nurse practitioner Kerri Ellis prescribed anti-depressant medications, which she managed for the claimant until November 25, 2008 (Tr. 302-03, 310-13, 318-24). There is no record of psychotropic medications between February 2009 and January 2010 (Tr. 293-302). On February 12, 2010, Ms. Ellis again prescribed anti-anxiety medications, which she managed for the claimant until August 16, 2011 (Tr. 271-91, 539-48).

State reviewing physician Dr. James Sturgis completed a Psychiatric Review Technique on May 11, 2011 (Tr. 502-15). Dr. Sturgis found that claimant's mental impairments consisted of major depressive disorder, recurrent, and anxiety evidenced by

recurrent and intrusive recollections of a traumatic experience (Tr. 505, 507). As a result, Dr. Sturgis found that the claimant was moderately impaired in the functional categories of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace and he opined that the claimant could perform simple work (Tr. 512, 514). Dr. Sturgis also completed a Mental Residual Functional Capacity Assessment (MRFCA) and found in his Section I "Summary Conclusions" that the claimant was moderately limited in her ability to understand and remember detailed instructions and in her ability to maintain attention and concentration for extended periods of time and markedly limited in her ability to carry out detailed instructions, to interact appropriately with the general public, and to accept instructions and respond appropriately to criticism from supervisors (Tr. 516-17). In his Section III "Functional Capacity Assessment," Dr. Sturgis concluded that claimant could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, could not relate to the general public, and could adapt to a work situation (Tr. 518).

Ms. Ellis completed a Mental Status Form on August 6, 2011 (Tr. 537). She noted the claimant's affect was flat, her thought content was appropriate, and that she had no mental deficit, but was somewhat slow to respond (Tr. 537). Ms. Ellis stated the claimant's prognosis was fair if she could continue centering her life around pain management efforts and that she did not expect the claimant to improve (Tr. 537). Ms. Ellis concluded that the claimant could remember and carry out simple and complex instructions on an independent basis, but could not respond to work pressure, supervision, and coworkers (Tr. 537).

At the administrative hearing, the claimant testified because of her posttraumatic stress disorder, she does not tolerate certain situations at work well, including irate callers, threats made against her, and discussions about fights or guns (Tr. 44-45). She testified her previous employer permitted her to "walk off" the job due to work environment triggers and that she did so once a week to a few times a month (Tr. 44-45). She further testified that she doesn't drive because she is afraid to, but that she drove herself to the administrative hearing (Tr. 56). She stated her typical day includes reading, watching television, and doing household chores in 10-15 minute increments (Tr. 57). Additionally, she testified that she does not leave her house most days because she doesn't like to be around people or in public (Tr. 58). As to her ability to concentrate, she said she could watch a one-hour television show and understand it, could follow simple one- or two-step instructions, but does not handle changes in routine well (Tr. 60-61).

In her written opinion, the ALJ gave significant weight to the state reviewing physician opinions, and rejected the opinion of Ms. Ellis, stating that she was not a mental health professional or employed by a mental health professional, and that the objective medical evidence discussed earlier in her opinion did not show that the claimant was unable to respond to work pressure, supervision, or co-workers (Tr. 25).

The claimant first argues that the ALJ failed to properly analyze Dr. Sturgis's MRFCA. More specifically, the claimant argues the ALJ failed to acknowledge Dr. Sturgis's Section I finding that the claimant was markedly limited in her ability to accept instructions and respond appropriately to criticism from supervisors in her RFC findings.

Social Security Ruling 96–6p indicates that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4. These opinions are to be treated as medical opinions from non-examining sources. *Id.* at *2. Although the ALJ is not bound by a state agency physician's determination, he cannot ignore it and must explain the weight given to the opinion in his decision. *Id. See also Valdez v. Barnhart,* 62 Fed. Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it.") [unpublished opinion], *citing* 20 C.F.R. § 416.927(f)(2)(ii). Here, the ALJ gave great weight to Dr. Sturgis's Section III written conclusions, but failed to discuss why she refrained from specifically including any limitations related to his Section I finding the claimant was markedly limited in her ability to accept instructions and respond appropriately to criticism from supervisors. *See, e.g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

The Commissioner correctly notes that the Tenth Circuit has favorably cited the Social Security Administration's Program Operations Manual Systems (POMS), which "provides that Section III of the MRFCA, not Section I, is for recording a medical consultant's formal mental RFC assessment, and that adjudicators are to use the Section

III narrative as the RFC Assessment[.]" *Carver v. Colvin,* 600 Fed. Appx. 616, 618-619 (10th Cir. 2015), *citing* POMS DI 25020.010 B.1. However, the Court continued on to say "this does not mean that an ALJ can turn a blind eye to moderate Section I limitations . . . if a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, *or if it contradicts limitations marked in Section I*, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Carver,* 600 Fed. Appx. at 619 [emphasis added]. In this case, Dr. Sturgis found *marked* limitations in the claimant's ability to accept instructions and respond appropriately to criticism from supervisors in Section I, but then concluded in Section III that she could relate to supervisors and peers on a superficial work basis. The ALJ failed to explain how Dr. Sturgis's Section I marked limitation was consistent with his Section III written conclusion, which the POMS itself requires. *See* POMS DI 24510.065.

Furthermore, Social Security regulations provide for the proper consideration of "other source" opinions such as that provided by Ms. Ellis herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *1 (Aug. 9, 2006). *See also* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *6 ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to

follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact, (ii) whether the opinion is consistent with other evidence, (iii) the extent the source provides relevant supporting evidence, (iv) how well the source's opinion is explained, (v) whether claimant's impairment is related to a source's specialty or area of expertise, and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p at *4-5; 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ referenced only the fifth factor in her opinion, disregarding that Ms. Ellis managed the claimant's psychotropic medications for more than a year and disregarding each of the other relevant factors. It is therefore unclear whether she considered them. *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [emphasis in original]. Nor did the ALJ discuss Ms. Ellis's opinions in relation to the other evidence of record. Notably, both Ms. Ellis and Dr. Sturgis found the claimant had limitations regarding her ability to respond to supervision. The ALJ simply rejected Ms. Ellis's opinions in favor of an opinion by a state agency physician who neither examined nor treated the claimant. *See, e. g., Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-1395 (9th Cir. 1984).

Because the ALJ failed to properly consider the opinion evidence provided by Dr. Sturgis and the "other source" evidence provided by Ms. Ellis, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 3rd day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**